Filed 5/20/21  P. v. Mata CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ISIDORO MATA,<br><br>    Defendant and Appellant. | F080013<br><br>(Super. Ct. No. 1219225)<br><br>**OPINION** |

### THE COURT*

APPEAL from an order of the Superior Court of Stanislaus County.  Dawna Reeves, Judge.

Charles M. Bonneau, Jr., under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Daniel B. Bernstein, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*Before Hill, P.J., Detjen, J. and Peña, J.

**INTRODUCTION**

A jury convicted defendant Isidoro Mata of multiple counts, including first degree murder and three counts of attempted murder, in connection with a series of drive-by shootings in which defendant was the driver. Following the passage of Senate Bill No. 1437 (2017–2018 Reg. Sess.) (Senate Bill 1437), defendant filed a petition for resentencing pursuant to Penal Code section 1170.95, asserting he was entitled to resentencing under the new laws. (Undesignated statutory references are to the Penal Code.) After appointing defendant counsel and receiving briefing by the parties, the court denied the petition, stating the murder conviction was based on theories of premeditation and deliberation and aiding and abetting a firearm discharge from a motor vehicle, rather than a now invalidated theory of murder. The court reasoned the jury found true the "special allegation" that defendant "acted with an intent to kill that was deliberate and premeditated." Defendant appeals the denial of his petition.

We affirm the trial court's order.

**FACTUAL AND PROCEDURAL BACKGROUND**

In 2006, defendant drove his car into a Modesto neighborhood and stopped in front of four different residences while his front seat passenger, Angel Cabanillas (Angel), pointed and fired a rifle at various people, resulting in the death of one victim and injury to another. As a result of the incident, a jury convicted defendant of multiple counts, including first degree murder in violation of section 187. The following summary of facts presented by the prosecution at trial was detailed in our prior opinion.

> "On June 10, 2006, around 6:00 p.m., members of the Marquez family, including a number of children, were in the front yard of their house on Montavenia Drive. Alicia Marquez was wearing a red shirt and sitting on a car parked in the driveway. A teal Honda Accord drove slowly by the house. Three Hispanic males with 'bald heads' were in the car. Monica Marquez assumed the car's occupants were Sureños. Someone in the car made a gang sign of the number '13' with his hand. The Honda returned and stopped in front of the house. Angel pointed a rifle at Alicia and then

2.

at the others in the front yard.  He also commented on Alicia's red shirt and cursed at her in Spanish.

"After leaving the house on Montavenia Drive, the Honda stopped at a house two doors down on Parducci Drive.  Esteban, who was known to associate with Sureños, approached the car and spoke with the Honda's occupants.  Esteban's sister, Azalia Berumen, came out of the house and started hitting the Honda and arguing with Angel.  Angel pointed a rifle at Berumen and said, 'South Side.'  Then the Honda drove away.  Shortly thereafter, witnesses heard gunshots which sounded like they came from Almaden Way, the street above Montavenia Drive and Parducci Drive.

"The same evening, a large birthday party for Robert Alcazar was in progress at his house on Almaden Way.  The party was attended by numerous adults and children, none of whom were known to be connected with any gang.  Activities were set up in front of the house, including a basketball court and bounce house.  Sometime around 6:00 p.m., the Honda drove slowly by Alcazar's house.  Alcazar observed that there were three 'bald' Hispanic males in the Honda.  Angel leaned out of the window and made a 'What's up?' gesture with his hands.

"The Honda drove by and stopped in front of the house several more times.  During these stops, Angel pointed his rifle at Johnny Silva, who was wearing a red and white San Francisco 49ers jersey.  He also fired the rifle multiple times into the open garage of Alcazar's house, where partygoers were attempting to take cover.  Alcazar's close friend, Manuel Rayas, was struck and collapsed.

"Rayas died from a single gunshot wound to his chest.  The bullet fragment extracted during Rayas's autopsy was consistent with a .22–caliber bullet.  The 'clean' shape of Rayas's wound indicated the bullet did not hit any other object before hitting his body.

"Lisa Averell, a witness who attended the party on Almaden Way, identified Angel from a photograph as the shooter and identified [defendant] in court as the driver of the Honda.

"Finally, around 6:10 p.m., the Honda car stopped at a house on Spokane Street, where Andres Esparza was standing in the driveway talking on a portable telephone.  Esparza's father was also sitting outside the house.  One of the car's occupants said, 'We're scrapas.'  Esparza answered, 'What do I have to do with [them]?'  A rifle came out of the passenger window and was aimed at Esparza.  Esparza threw himself down on the ground and was shot in the leg.  The Honda then took off.

"The parties stipulated to the following facts: At 6:11 p.m., on June 10, 2006, the first of a series of 911 calls was made to Stanislaus County emergency dispatch regarding the shooting on Almaden Way. At 6:14 p.m., a 911 call came in reporting the shooting on Spokane Street. At 6:23 p.m., a Modesto Police Department patrol car reported that it was following a teal Honda. The Honda was followed until it was stopped at 6:27 p.m., by three police patrol cars. When the Honda was stopped it was being driven by [defendant], Angel was the right front passenger, and Pedro [Cabanillas, Angel's brother,] was in the backseat. The Honda previously had been purchased for [defendant] by his father.

"According to police testimony, at the time of the traffic stop, [defendant], Angel, and Pedro all had shaved heads; Angel and [defendant] both wore white T-shirts, and Pedro wore a dark colored shirt." (*People v. Mata* (Sept. 21, 2012, F061132) [nonpub. opn.] [2012 Cal.App. Unpub. Lexis 6877 at pp. *3–*6.)[1]

The jury convicted defendant of 11 offenses, including first degree murder (§ 187; count I), attempted murder (§§ 664, 187; counts II, III, & VII), shooting at an occupied building (§ 246; counts IV–VI), shooting at a person from a motor vehicle (former § 12034, subd. (c); count VIII), assault with a firearm (§ 245, subd. (a)(2); counts IX–X), and active participation in a criminal street gang (§ 186.22, subd. (a); count XI) in connection with the drive-by shootings. The verdict form as to count I reflects the jury found defendant guilty of first degree murder in violation of section 187, subdivision (a) and further found that he "did act intentionally, deliberately and with premeditation." The jury also found numerous sentence enhancement allegations to be true and concluded with regard to the attempted murder charges that defendant acted "intentionally, deliberately, and with premeditation.

### Petition for Resentencing

In February 2019, defendant submitted a petition for resentencing pursuant to section 1170.95, using a form prepared by Re:Store Justice, a cosponsor of Senate Bill 1437. He checked boxes stating a charging document had been filed against him

---

[1]We take judicial notice of the record and our prior unpublished opinion in this matter pursuant to Evidence Code section 451, subdivision (a).

allowing the prosecution to proceed under a felony-murder theory or the natural and probable consequences doctrine; at trial, he was convicted of first or second degree murder under a felony-murder theory or the natural and probable consequences doctrine; and he could not now be convicted of murder in light of changes made to sections 188 and 189, effective January 1, 2019 (pursuant to Senate Bill 1437). He also checked a box indicating that he was convicted of first degree murder but could not now be convicted because he was not the actual killer, he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree, and he was not a major participant in the felony or did not act with reckless indifference to human life during the course of the crime or felony. He also checked a box stating, "I request that this court appoint counsel for me during this re-sentencing process." He did not attach or include any additional information or documents to his petition.

The People responded to the petition, arguing defendant was not entitled to relief because the facts of the case established he was a major participant in the offense who acted with reckless indifference to human life. They also argued Senate Bill 1437 is unconstitutional. Defendant, represented by appointed counsel, replied to the People, arguing there was a reasonable doubt as to whether he aided and abetted Angel because Angel may have shot out of self-defense. He also asserted the prosecution argued and the court instructed the jury on the natural and probable consequences theory.

The court denied the petition, concluding defendant "failed to establish a prima facie case that he is entitled to relief." The court reasoned:

> "The appellate opinion affirming the [defendant]'s conviction and sentence reflects that [defendant] drove his car into a Modesto neighborhood and stopped in front of 4 different residences while his front seat passenger pointed and fired a rifle at various people resulting in the death of one victim and injury to another. [Defendant] was convicted of first degree murder under the theory that the murder was premedi[t]ated, deliberate and intentional.

"A review of the record of conviction and court file establishes that the jurors were instructed with Cal Crim 521 which outlined the theories of 1st degree murder as follows:

"Theory 1: Willful, deliberate and premeditated intention to kill

"and

"Theory 2: Aiding and abetting a firearm discharge from a motor vehicle.

"The jurors were further instructed that they need not agree on the theory of murder so long as they all agreed that defendant was guilty of 1st degree murder under one of the theories. However, in this case the jurors unanimously agreed that that [*sic*] [defendant] was guilty of 1st degree murder under the theory that he acted with an intent to kill that was deliberate and premeditated by finding true the special allegation. This finding prevents [defendant] from establishing a prima face case for relief under Penal Code section 1190.75 [*sic*] in that the Petition wrongfully asserts that he 'did not, with the intent to kill, aid, abet[,] counsel, command, induce, solicit or assist the actual killer[.]'"

## DISCUSSION

Defendant challenges the denial of his petition for resentencing. We affirm the court's denial.

## 1. Senate Bill 1437 and Section 1170.95

On September 30, 2018, the Governor signed Senate Bill 1437, which became effective on January 1, 2019. Senate Bill 1437 "amend[s] the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) It amends sections 188, which defines malice, and 189, which defines the degrees of murder to address felony-murder liability, and it adds section 1170.95, which provides a procedure by which those convicted of murder can seek retroactive relief if the changes in law would affect their previously sustained convictions. (Stats. 2018, ch. 1015, §§ 2–4.)

6.

Accordingly, section 188 now provides that, "[e]xcept as stated in subdivision (e) of Section 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. *Malice shall not be imputed to a person based solely on his or her participation in a crime*." (§ 188, subd. (a)(3), italics added.) The change reflects the Legislature's intent that "[a] person's culpability for murder must be premised upon that person's own actions and subjective mens rea." (Stats. 2018, ch. 1015, § 1, subd. (g).)

Additionally, section 189 previously stated, "All murder … which is committed in the perpetration of, or attempt to perpetrate, arson, rape, carjacking, robbery, burglary, mayhem, kidnapping, train wrecking, or any act punishable under Section 206, 286, 288, 288a, or 289, or any murder which is perpetrated by means of discharging a firearm from a motor vehicle, intentionally at another person outside of the vehicle with the intent to inflict death, is murder of the first degree." Senate Bill 1437 amended section 189, in part, by adding subdivision (e), which provides:

> "A participant in the perpetration or attempted perpetration of a felony listed in subdivision (a) in which a death occurs is liable for murder only if one of the following is proven: [¶] (1) The person was the actual killer. [¶] (2) The person was not the actual killer, but, with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree. [¶] (3) The person was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2."

Newly enacted section 1170.95 permits those "convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court that sentenced the petitioner to have the petitioner's murder conviction vacated and to be resentenced on any remaining counts …." (*Id.*, subd. (a).) An offender may file a petition under section 1170.95 where all three of the following conditions are met:

> "(1) A complaint, information, or indictment was filed against the petitioner that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine[;] [¶] (2) The

7.

petitioner was convicted of first degree or second degree murder following a trial or accepted a plea offer in lieu of a trial at which the petitioner could be convicted for first degree or second degree murder[;] [¶] [and] (3) The petitioner could not be convicted of first or second degree murder because of changes to Section 188 or 189 made effective January 1, 2019." (§ 1170.95, subd. (a)(1)–(3).)

A trial court receiving a petition under section 1170.95 "shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section." (§ 1170.95, subd. (c).) If the petitioner has made such a showing, the trial court "shall issue an order to show cause." (*Ibid*.) The trial court must then hold a hearing "to determine whether to vacate the murder conviction and to recall the sentence and resentence the petitioner on any remaining counts in the same manner as if the petitioner had not been previously been [*sic*] sentenced, provided that the new sentence, if any, is not greater than the initial sentence." (§ 1170.95, subd. (d)(1).)

If a hearing is held, "[t]he prosecutor and the petitioner may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (§ 1170.95, subd. (d)(3).) "[T]he burden of proof shall be on the prosecution to prove, beyond a reasonable doubt, that the petitioner is ineligible for resentencing." (*Ibid*.) "If the prosecution fails to sustain its burden of proof, the prior conviction, and any allegations and enhancements attached to the conviction, shall be vacated and the petitioner shall be resentenced on the remaining charges." (*Ibid*.)

2. **Analysis**

Defendant asserts the court erred in denying his section 1170.95 petition as to his murder conviction and the three attempted murder convictions. He asserts, though there was an instruction regarding direct aiding and abetting with shared knowledge and intent, the prosecutor relied upon an indirect aiding and abetting theory in which murder was a natural and probable consequence of shooting at an occupied dwelling. He contends the special findings of premeditation established only that his codefendant acted with premeditation. He asserts there was no evidence of shared knowledge of intent to kill

8.

based upon a conspiracy or prior agreement to kill. He further contends even if he had known his codefendant intended to shoot weapons at houses, he did not necessarily know his codefendant would shoot at people or commit murder. He asserts, based upon the record and the prosecutor's argument to the jury, "the murder conviction was based squarely on the [natural and probable consequences] doctrine." Accordingly, his case should be remanded so that a hearing can be held on the petition. The People respond the court properly denied the petition because the jury's verdict on the murder charge included a finding defendant intended to kill the victim, rendering him ineligible for relief under section 1170.95. They further argue the jurors could have inferred defendant had the "intent to kill perceived gang rivals based on evidence that, before the fatal shooting, [defendant] drove with [Angel] to two other locations, where [Angel] pointed his rifle at persons while uttering gang slogans, and then drove past another house a few times before [Angel] opened fire and shot … Rayas in the front yard." They also contend defendant never raised his claim that section 1170.95 extends to attempted murder convictions below, so the claim is forfeited. Additionally, the People assert section 1170.95 does not extend to those convicted of attempted murder. They argue, irrespective, the jury's verdicts on the attempted murder counts included a finding defendant intended to kill the victims, rendering him ineligible for relief. We conclude the court did not err in denying the petition.

Here, the People prosecuted defendant for first degree murder under two different theories: "One, malice aforethought, and two, shooting from a motor vehicle." The court explained in its instructions that "[e]ach theory of murder has different requirements." The court instructed the jury on the first theory of willful, deliberate, and premeditated murder:

> "The defendant is guilty of first degree murder if the People have proved
> that he acted willfully, deliberately and with premeditation. [¶] The
> defendant acted willfully if he intended to kill. The defendant acted
> deliberately … if he carefully weighed the considerations for and against

9.

his choice, and, knowing the consequences, decided to kill. [¶] The defendant acted with premeditation if he decided to kill before committing the act that caused death."

The court then instructed the jury on the second theory of first degree murder arising from the discharge of a firearm from a vehicle:

"The defendant can also be found guilty of first degree murder if the People have proved that the defendant murdered by shooting a firearm from a motor vehicle. The defendant committed this kind of murder if: [¶] One, Angel Cabanillas shot a firearm from a motor vehicle; [¶] Two, Angel Cabanillas intentionally shot at a person who was outside the vehicle; [¶] Three, Angel Cabanillas intended to kill a person; [¶] And four, the defendant aided and abetted Angel Cabanillas in this offense."

Here, while the court instructed the jury on the natural and probable consequences doctrine, the jury convicted defendant of murder in the first degree in violation of section 187, subdivision (a) and expressly found true a separate allegation as to this count on the verdict form that "defendant did act intentionally, deliberately, and with premeditation." We presume the jury followed the jury instructions regarding the findings needed to support such a conclusion. Thus, the jury's verdict establishes it concluded beyond a reasonable doubt that defendant acted intentionally and deliberately with regard to the murder by "carefully weigh[ing] the considerations for and against his choice, and, knowing the consequences, decided to kill," and he acted with premeditation in that "he decided to kill before committing the act that caused death." Accordingly, the court did not err in concluding the jury's verdict rendered him ineligible for relief because he was convicted under a theory of murder liability—direct aiding and abetting—that is still valid after Senate Bill 1437.[2] (See *People v. Bentley* (2020) 55 Cal.App.5th 152, 154, review granted Jan. 19, 2021, S265455 [concluding defendant was ineligible for resentencing under § 1170.95 given jury's express finding murder was intentional and

[2]Whether a trial court may consider the record of conviction in determining if a prima facie showing of eligibility of relief under section 1170.95 has been made by a petitioner is currently pending before the California Supreme Court in *People v. Lewis* (2020) 43 Cal.App.5th 1128, review granted March 18, 2020, S260598.

10.

perpetrated by means of discharging firearm from motor vehicle with intent to inflict death]; *People v. Offley* (2020) 48 Cal.App.5th 588, 595–596 [Senate Bill 1437 did not alter law regarding criminal liability "of direct aiders and abettors of murder because such persons necessarily 'know and share the murderous intent of the actual perpetrator'"]; *People v. Verdugo* (2020) 44 Cal.App.5th 320, 330, review granted Mar. 18, 2020, S260493 [petitioner is ineligible for relief under § 1170.95 as a matter of law if he "was convicted on a ground that remains valid notwithstanding Senate Bill 1437's amendments to sections 188 and 189"]; accord, *People v. Drayton* (2020) 47 Cal.App.5th 965, 980 [court should accept assertions in petition as true unless facts in the record conclusively refute them as a matter of law]; *People v. Duchine* (2021) 60 Cal.App.5th 798, 811–812 [same].)

In so concluding, we find unpersuasive defendant's contention the jury's verdict only reflects its conclusion "that a premeditated murder was a natural and probable consequence of driving around while [Angel] pointed a rifle out the car window, ultimately shooting at houses of rival gang members." Such an interpretation belies the language of the jury's verdict. To find as such would require us to disregard the express language of the verdict form and to discount the jury's ability to faithfully follow the court's instructions. We decline to do so.

We also reject defendant's contention he is entitled to relief under section 1170.95 from his attempted murder convictions. We have previously noted "[t]he plain language of section 1170.95, subdivision (a) limits relief to persons 'convicted of felony murder or murder under a natural and probable consequences theory [to] file a petition with the court ….' No language in section 1170.95 references relief to persons convicted of attempted murder." (*People v. Medrano* (2019) 42 Cal.App.5th 1001, 1017, review granted Mar. 11, 2020, S259948 (*Medrano*); see also *People v. Larios* (2019) 42 Cal.App.5th 956, 970, review granted Feb. 26, 2020, S259983 (*Larios*) ["section 1170.95 is limited to certain murder convictions and excludes all other convictions"].) Indeed, as

11.

we held in *Medrano*, the legislative history of Senate Bill 1437 also supports a conclusion the relief provided in section 1170.95 is limited to certain murder convictions and excludes all other convictions, including a conviction for attempted murder. (*Medrano*, *supra*, at p. 1017.) As our sister courts have reasoned:

> "There may well be sound policy reasons for the Legislature to adopt ameliorative provisions like those in Senate Bill 1437 for individuals charged with, or convicted of, attempted murder under the natural and probable consequences doctrine. But the Legislature's decision to limit sentencing reform at this time to offenders in cases of murder is certainly rational. First, the gap between a defendant's culpability in aiding and abetting the target offense and the culpability ordinarily required to convict on the nontarget offense is greater in cases where the nontarget offense is murder, than where the nontarget offense is attempted murder or, in the prosecutor's discretion, aggravated assault. The Legislature could have reasonably concluded reform in murder cases 'was more crucial or imperative.' …

> "Second, the process created in section 1170.95 for those convicted of felony murder or murder under a natural and probable consequences theory to petition the sentencing court to vacate that conviction and to be resentenced is not cost free. The staff of the Senate Appropriations Committee estimated, if 10 percent of the inmates eligible for relief under Senate Bill 1437 petitioned the courts for resentencing, additional court workload costs would approximate $7.6 million. The committee's report expressed concern that this increase in workload 'could result in delayed court services and would put pressure on the General Fund to fund additional staff and resources.' (Sen. Com. Appropriations Report, p. 3.) Additional expenditures would also be required to transport petitioners in custody to and from court hearings. (*Ibid.*)

> "In a world of limited resources, it is reasonable for the Legislature to limit the scope of reform measures to maintain the state's financial integrity. [Citations.]" (*People v. Lopez* (2019) 38 Cal.App.5th 1087, 1111–1112, fn. omitted, review granted Nov. 13, 2019, S258175; see *People v. Munoz* (2019) 39 Cal.App.5th 738, 753–760, review granted Nov. 26, 2019, S258234; accord, *Medrano*, *supra*, 42 Cal.App.5th at p. 1017, review granted; *Larios*, *supra*, 42 Cal.App.5th at p. 970, review granted.)

Defendant argues such reasoning does not apply to his case because the "gap between the target offense and the attempted murder convictions [in his case] is virtually the same as the gap concerning the murder conviction" given that the victims were in the same garage, and "the financial cost of review has already been incurred" because his petition is authorized as to his murder charge and there is little or no additional cost in addressing his challenges to the attempted murder counts. However, as discussed, the language of the statute clearly limits relief to those convicted of murder. And the articulated reasoning provides a rational basis for the Legislature's decision to grant relief pursuant to section 1170.95 only to murder convictions and exclude attempted murder convictions generally based upon concerns over judicial economy and the financial costs associated with reopening both final murder and final attempted murder convictions. (See *Larios*, *supra*, 42 Cal.App.5th at p. 970, review granted.) As the People note, defendant's individual "case does not undermine the Legislature's rationale for dealing with the bulk of petitions filed under section 1170.95." Thus, in light of the statute's unambiguous language and legislative history, defendant is categorically excluded from seeking relief through the section 1170.95 petitioning procedure for his attempted murder convictions.

## DISPOSITION

The court's order denying defendant's section 1170.95 petition for resentencing is affirmed.